KENNEDY, Respondent, v. FIRST· STATE BANK OF WALL, Appellant.

(162 N. W. 152.)

(File No. 3964.     Opinion filed April 2, 1917.     Rehearing denied May 23, 1917.)

1.  **Appeals—Error—Review, Scope of—Instructions, Presumption of Correctness of, Where No Exceptions.**

    Where no exceptions were taken to trial court's charge, Supreme Court on appeal will assume that issues were fully and fairly submitted to jury upon instructions correctly stating law of the case.

2.  **Principal and Agent—Land Exchange—Disbursements for Improvements—Commissions—Rents—Broker, or Purchaser?— Sufficiency of Evidence.**

    In a suit involving four causes of action, (a) for recovery of a bank deposit in defendant bank, (b) for commissions alleged to be due plaintiff as agent of defendant in a trade of land for town realty, (c) for disbursements for repairs on a house traded for, etc., and (d) for moneys paid by plaintiff as commissions to third parties in the land deal, etc.; plaintiff's claim being that he acted as agent of defendant in the transaction, defendant claiming that it advanced to plaintiff moneys with which he himself was to consummate the deal on his own account; defendant having taken possession of an automobile, received in the trade, as security for the amount so advanced plaintiff, **held,** upon the controlling question whether plaintiff was agent of defendant, or the real party in interest in the land transaction, that, the evidence being in sharp conflict, it is sufficient to sustain the verdict for plaintiff.

32—Vol. 38, S. D.

**Whiting, J., and Gates, P. J., concurring specially.**

Appeal from Circuit Court, Pennington County. Hon. Levi McGee, Judge.

See, also, 34 S. D. 457, 149 N. W. 168.

Action by Frank N. Kennedy, against the First State Bank of Wall, S. D., to recover on four causes of action involving an exchange of land for city realty, etc. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Williams & Sweet,* for Appellant.

*T. H. Conniff,* and *Buell & Denu,* for Respondent.

SMITH, J. This case was once before this court upon a materially different state of facts, and is reported in 34 S. D. 457, 149 N. W. 168.

Plaintiff pleads four causes of action, all of which are connected with a single transaction in which plaintiff claims to have acted for defendant in making an exchange of lands in Pennington county, S. D., for an automobile and a house and lot in the town of Bloomfield, Neb. The jury returned a verdict for $415.05, and interest, the exact amount claimed by plaintiff.

One Collins owned the Pennington county land. One Uhling, who lived at Bloomfield, owned the house and lot and automobile. The controversy arose out of an exchange of these properties. It was plaintiff's contention, and he testified in substance, that he was not the real principal in the transaction, though the deal was put through in his name as principal; that Kneeland and Stensland, both officers of the defendant bank, had learned that Uhling wanted to trade the house and lot in Bloomfield and automobile, for land, and they could buy the Collins land on certain terms; that plaintiff saw Collins and brought him to the bank on October 23, 1911, and a deed of the land was there made out, but not then signed, as Mrs. Collins was not present; that the name of the grantee was left blank in this deed; that the Collins land was mortgaged for $350, and Kneeland and Stensland were to pay Collins $500 for his equity; that the same day plaintiff went to Bloomfield at the request of Kneeland and Stensland to get Uhling to make a written contract for the exchange of the Collins land for the house and lot and the automobile; that on October 26th, to accomplish this purpose, plaintiff

entered into a written contract in his own name with Uhling to exchange the Collins land for the Bloomfield property, and the same day notified defendant bank by wire and by letter that he had closed the deal with Uhling; shortly afterward, the last of October or first of November, Stensland wrote plaintiff to break the Uhling deal, as he had a better trade for the Collins land at Huron; could get a better car; plaintiff answered that there was a forfeit of $350 in the Uhling contract, and he was not going to lose it; that thereafter, on November 8th, Kneeland went to Bloomfield, and telephoned Uhling at his farm to come in to town; that Uhling came, and Uhling and Kneeland talked the deal over; Kneeland brought with him the deed for the Collins land, signed by Collins and his wife, and the abstract of title to the land; that the trade was then made, and Uhling turned over the deed of the house and bill of sale of the automobile to Kneeland, who looked them over and handed them to plaintiff; that plaintiff thereupon asked Kneeland whose name he wanted inserted in the Uhling conveyances as grantee, and Kneeland said not to put in the name of the bank; that Stensland was not there, and Mrs. Kneeland was in California, and suggested that plaintiff's name be inserted as grantee, which was done; Uhling's name was inserted as grantee in the Collins deed, and it was delivered to Uhling; Kneeland then arranged with Dahl, an insurance agent, for insurance on the Uhling house; Uhling and plaintiff then went to Uhling's home and got the automobile, which Kneeland told them to take to a garage; Kneeland and plaintiff then went to John Kloke, a real estate dealer, and told him to sell the house and lot in Bloomfield for $1,000, and that he might sell for $900 if he could not get $1,000; the next morning at the hotel Kneeland told plaintiff he had used money out of the bank to pay Collins the $500 for the Collins land, and asked plaintiff to give the bank a demand note for $500 to cover up this amount, as they had done in other transactions, and plaintiff gave it; that plaintiff was assisted by Kloke, a real estate dealer at Bloomfield, in making the Collins-Uhling deal, and Kneeland and Stensland agreed to allow Kloke $100 for his services, and to pay plaintiff $75 for his services; that while they were in Bloomfield, and at Kneeland's request, plaintiff advanced and paid this $100 to Kloke, and Kneeland agreed to deposit the amount in

the defendant bank to plaintiff's credit on his return to Wall, and also the amounts plaintiff had expended in making the trip to Bloomfield; that before leaving Kneeland told plaintiff to have the floor of the house painted, and the sink and cellar fixed, and he would reimburse him for the expense; that when the trade was made Kloke agreed with Kneeland to drive the Uhling car to Wall, without charge, the next Sunday; that Kneeland agreed to pay Kloke's expenses to Wall and his car fare back to Bloomfield; that it rained, and Kloke was prevented from driving the car to Wall. At the time the deal was closed it was thought by both parties that the house and lot could be sold in a short time for enough to get back the money invested, which would leave the automobile as clear profit. No purchaser for the house and lot or automobile was found, however, and Kneeland complained to plaintiff of the delay, and about March 1, 1912, plaintiff and Kneeland met at Wall and made an oral agreement that plaintiff take the house and lot and automobile, and dispose of them as he saw fit, and get or borrow enough money to reimburse the bank for what it had invested in the deal, and that Kneeland also should have the right to sell for that purpose if he could. Under this arrangement, plaintiff was to have such extensions of time to raise the money as were necessary. Pursuant to this understanding, plaintiff deeded the house and lot to the bank and took back a contract dated February 2, 1912, to repurchase the property on or before April 1, 1912, upon payment of $400, the amount coming to the bank. The automobile remained in plaintiff's possession. The latter part of March, 1912, plaintiff wrote the bank saying he had been unable to raise the money, and asked an extension. In reply Stensland, on April 2, 1912, ignoring the request for an extension, wrote plaintiff that the bank wanted to buy a car, and asked him to put his lowest price on the automobile, and ship it to Wall, and if the car was all right and the price right, they would buy it; to ship the car with extra tires and everything complete. On March 6, 1912, plaintiff wrote in reply that the car was worth $700, but that he would deliver it in Wall in first-class condition for $600, and that delivery would net him about $500. A little later plaintiff wrote Stensland that the expense of shipping the car would be greater than he had anticipated, and asked Stensland to come down and look the car over and see

whether it suited him, and, if it did, the car could be run up to Wall for half what it would cost to ship it; that Harry Fuller could run it up to Wall. In reply Stensland telegraphed plaintiff to start Fuller with the car at once, and to wire him. In reply plaintiff wired and wrote that the roads were muddy, would start the car as soon as posible, but would rather have Stensland come down and go back with the car, and said:

"I would want all the notes and sent me here, as I may not be up for some time, as I do not look for any one to leave here for at least a month, and I will let you have the car for $500 net to me, as that is cheap for the car."

On April 24, 1912, plaintiff wrote that he had just started Fuller and another person with the car, and it would arrive the 26th or 27th, and said:

"Now you deliver all notes, deed, and bill of sale you can keep, as that will do in this deal, and make out draft for all over what I owe your bank. I could not get away or I would of come with the car."

On the same date, plaintiff appears to have written another letter to Stensland in which he stated that he was starting Fuller with the car, and said:

"Now you turn over all the notes and all papers to him; also make draft out for the difference that I owe the bank. * * * Deliver papers to Harry Fuller and make out draft for all over the amount of the notes and interest which should be about $400.00 total due you. Now I have instructed Fuller to look after everything, and hope he and you can get this fixed out in good shape."

On May 8, 1912, Stensland wrote plaintiff saying the car had arrived, but that they did not want to buy it at $600, but that he had taken possession of the car and put it in the barn; that plaintiff had failed to meet his notes when due, and they were entitled to hold the car until the notes were paid, or to sell it and apply the money on the notes, but that they would extend the time of payment on the notes until June 1, 1912, and unless the notes were taken care of by that time they would hold the automobile and the deed to the house, and his right of redemption would be forfeited. Upon the receipt of this letter, plaintiff immediately went to Wall and saw Mr. Kneeland, who said to

him, "You have lost everything you have in it, and you don't dare squeal." Plaintiff then said to him, "It will cost me $50 to beat the case," and offered to give Kneeland that amount and take the car back to Nebraska, but Kneeland refused. At the same time plaintiff tendered to Kneeland a draft for the amount due the bank, but Kneeland refused to accept it. It is conceded that the defendant bank thereafter converted the automobile and the house and lot in Bloomfield to their own use, and that plaintiff never received anything out of the proceeds of the property, and has never received back his $500 note given at the time the original deal was consummated at Bloomfield.

A direct conflict is disclosed in the evidence, the defendant bank claiming that it advanced the $500 paid to Collins for the land and took plaintiff's note therefor, to aid him in consummating the deal, and that they were entitled to appropriate the house and lot in Bloomfield and the automobile in satisfaction of plaintiff's indebtedness to the bank, including an alleged overdraft of some $82 for which plaintiff had given the bank his note. It is disclosed that at the time plaintiff gave the $500 note he had a deposit of $200 in the defendant bank, and that the bank also appropriated this deposit in part payment of the $500 note.

Plaintiff's first cause of action, as alleged in the complaint, is for the recovery of the amount of this deposit. The second cause of action is for $75 commissions alleged to be due for his services in connection with the original trade. The third cause of action is made up of items paid by plaintiff for repairs on the Bloomfield house, and for repairs and storage paid by him on the automobile while at Bloomfield. The fourth cause of action is for the $100 paid as commissions to Kloke at Bloomfield, and the amount of Kneeland's hotel bill while there. Upon the aggregate of these claims plaintiff credited $83.70, his overdraft, and $65 rent collected on the house at Bloomfield, and claimed a balance of $415.05, which was the amount of the verdict, with interest.

[1] No exceptions were taken to the charge of the court, and we must assume that the issues were fully and fairly submitted to the jury upon the instructions correctly stating the law of the case.

[2] Upon this appeal appellant assigns no error except that the evidence is insufficient to sustain the verdict and judgment.

Appellant in his brief concedes that the sufficiency of the evidence to sustain plaintiff's claim of agency is the controlling issue, and says:

"The question raised by the pleading in this case is whether plaintiff was the agent of defendant or the real party in interest in a certain land transaction had between October 15, 1911, and February 2, 1912."

We are not called upon to consider any other phase of the case. Upon this issue the evidence is in sharp conflict. The evidence of plaintiff is strongly corroborated in many particulars by the testimony of Dahl, Collins, Fuller, and Kloke. We are of the opinion that the evidence is sufficient to sustain the verdict, and that this court is without authority to disturb it.

The order and judgment of the trial court are therefore affirmed.

WHITING, J. (concurring specially). Upon the former appeal a new trial was granted because, in the view of the majority of the court, certain letters, conceded to have been written by plaintiff, entirely destroyed the evidentiary force of plaintiff's testimony as given at the trial from which such appeal was taken. Plaintiff gave no explanation of the variance between the statements contained in such letters and the theory upon which he was claiming to recover; furthermore, his testimony was then without corroboration. Upon the trial from which this appeal was taken there was ample corroboration of plaintiff's testimony; furthermore, plaintiff testified much more fully and explained many things left wholly unexplained upon the former trial. Considering the evidence at it appears in the settled record, it would seem as though it preponderates in favor of defendant; but the trial court and the jury saw the witnesses, and thus had an opportunity to determine the weight to be given to the testimony of each, and I am of the opinion that upon the trial from which this appeal was taken ample evidence was received which, believed by the jury, warranted it in rendering a verdict in plaintiff's favor.

GATES, P. J., concurs in views of Justice WHITING.